18

## Daniel MARTIN *v.* Karen Lyn MARTIN

CA 81-420                                    637 S.W.2d 612

Court of Appeals of Arkansas
Opinion delivered August 25, 1982

*David H. Williams,* for appellant.

*Cearley, Gitchel, Mitchell & Roachell,* by: *Charles D. Harrison,* for appellee.

MELVIN MAYFIELD, Chief Judge. Both parties agree that this appeal involves the construction or interpretation of a property settlement agreement incorporated in their divorce decree.

The agreement provided that the wife would be entitled to the exclusive use and possession of a house (owned by the parties as tenants by the entirety) for a period of ten years or until certain contingencies occurred. Upon the occurrence of any named contingency the house would be sold and the proceeds divided equally after each party received his and her original contribution to the purchase price.

During the wife's use and possession the husband was to pay to her one-half of the monthly mortgage payments and the agreement provided: "In the event of default by the husband for a period in excess of sixty days, the wife may treat the husband's default as a breach of this Agreement and thereby fix his equity in the property pursuant to the above formula as of the date of the default."

Shortly after the decree was entered the husband failed to pay his portion of a mortgage payment and after he missed another payment a motion was filed by the wife asking that the husband be held in contempt and that she have judgment against him for his past due payments.

The controversy centers around the meaning of the word "may" in the sentence set out above. At the hearing before the trial court, it was the husband's contention that

this sentence meant he *could* make the payments and thus build up his equity in the house, but that he was not locked into doing so and if he stopped making the payments his equity would be fixed at that time. It was the wife's contention that the sentence gave her the option to treat the husband's default as a breach of the agreement and fix his equity at that time *or* to treat the agreement as continuing and seek to enforce the payment provision.

The trial court agreed with the wife and gave her judgment for the amounts found due and the husband appeals. The issue on appeal is raised by appellant's contention that the trial court erred in refusing to allow him to introduce evidence to show his understanding of the meaning of the sentence involved. Contending that the trial court was wrong in holding the settlement agreement clear and unambiguous and in construing it from the four corners of the document, the appellant cites Corbin, *Interpretation of Words and the Parol Evidence Rule,* 50 Cornell L.Q. 161, 164 (1965) that:

> [N]o man can determine the meaning of written words by merely gluing his eyes within the four corners of a square paper . . . when a judge refuses to consider relevant extrinsic evidence on the ground that the meaning of written words is to him plain and clear, his decision is formed by and wholly based upon the completely extrinsic evidence of his own personal education and experience.

Our problem is somewhat complicated by the nature of the hearing below. The attorneys stated their contentions to the judge and he told them that, in his opinion, the meaning of the agreement was clear and the word "may" unambiguous and since there was no argument over the amount, he would enter judgment against appellant for the amount due. Thus there was actually no proffer of evidence which the court refused to allow appellant to introduce. Before the Uniform Rules of Evidence became effective such a proffer was necessary but under Uniform Evidence Rule 103 (a) (2) error may be predicated upon a ruling excluding evidence if "the substance of the evidence was made known to the court

by offer or was apparent from the context within which questions were asked."

Although no witness was questioned, it does appear that the "substance of the evidence" which appellant wanted to introduce was apparent to the trial court. The record, of course, must also reveal that evidence to this court before we can review the trial court's action. What the record shows in that regard is that appellant's counsel stated to the trial court that he wanted to put on evidence of the appellant's "understanding" of the agreement which was "that he could escape from it by defaulting, by not making payments in excess of sixty days, and thereby fix his equity and at some time in the future, when the house is sold, get his money out of the house."

We do not think the quotation from Professor Corbin supports appellant's contention that his "understanding" of the agreement was admissible in evidence. We agree that in determining the intention of the parties to a contract evidence is admissible in order that the court may acquaint itself with the parties and circumstances involved in the making of the contract. *Barrett Real Estate* v. *Land Mart of America*, 3 Ark. App. 70, 621 S.W.2d 889 (1981). But this is not what the appellant wanted in evidence. He wanted to show *his understanding* of what the word "may" meant. Another quotation from Professor Corbin applies to that contention:

> 15. If one party asserts an interpretation that accords with the linguistic education and experience of the court, and the other party asserts an interpretation that does not so accord and offers no relevant evidence that the first party knew or had reason to know the latter interpretation, the first party's interpretation will prevail.

3 *Corbin on Contracts* § 572 (B) (Supp. 1971).

The appellant says that the word "may" is sometimes construed as "shall" or "must" and cites *Ark. Rock and Gravel Co.* v. *Chris-T-Emulsion*, 259 Ark. 807, 536 S.W.2d

724 (1976) where the court said "the Spring of '74" was ambiguous because dictionaries recognize it is popularly considered to be the months of March, April, and May, but scientifically considered to be the period from the vernal equinox (about March 21) to the summer solstice (about June 21). But that case also said:

> It is true that when the language of a contract is ambiguous, proof of oral negotiations is admissible to show that the language was intended to have "any particular meaning that the words will reasonably bear." *Kerr* v. *Walker*, 229 Ark. 1054, 321 S.W.2d 220 (1959). But the rule does not allow a party to prove by oral testimony that clear and unambiguous words were *subjectively* intended to have a meaning not fairly attributable to them. (Emphasis added.)

The case of *Countryside Casualty Co.* v. *Grant*, 269 Ark. 526, 601 S.W.2d 875 (1980) is cited by appellant as a case where parol evidence was allowed to "explain the true intentions of the parties." Here, however, the appellant did not tell the court that he wanted to introduce evidence to show what the *parties* intended by the use of the word "may." We do not believe the appellant has demonstrated that the court refused to hear any evidence which would show that the *parties* intended any meaning other than that found by the trial court. As the *Countryside Casualty* case holds, the intention of the parties is a question of fact. We do not reverse factual findings unless the trial court is clearly in error, Civil Procedure Rule 52 (a). We find no error in this case.

Affirmed.