Virgil Eugene PAULSON *v.* Lula Beth PAULSON

CA 82-403                                    652 S.W.2d 46

Court of Appeals of Arkansas
Opinion delivered June 8, 1983
[Rehearing denied July 6, 1983.]

*Patten, Brown & Leslie,* by: *Virgil Eugene Paulson,* for appellant.

*Rowland & Templeton,* by: *Ben D. Rowland, Jr.,* for appellee.

GEORGE K. CRACRAFT, Judge. Virgil Eugene Paulson appeals from that part of a separate maintenance decree which awards Lula Beth Paulson attorney's fees. He contends that the court had no authority to allow attorney's fees against him pursuant to a separate maintenance decree and that the fees allowed were excessive. Appellee cross appeals contending that the award of separate maintenance was inadequate and that the chancellor erred in failing to let her make adequate discovery of appellant's assets. We find no merit in either the appeal or the cross appeal.

The voluminous record consists of over 640 pages. Appellant's abstract consists of 86 pages. The appellee's supplemental abstract consists of 136 pages and an additional 30 pages of material neither contained in the record nor introduced before the trial court. No useful purpose could be accomplished by a lengthy recitation of all the testimony, most of which was conflicting. We will, therefore, confine our references to the evidence which we deem necessary to an understanding of our decision.

## THE APPEAL

The parties were married in 1947 and have three adult children. The appellee commenced this action as one for an absolute divorce on grounds of general indignities. She further prayed for a property settlement and attorney's fees.

The defendant denied the allegations of her complaint and cross-complained against her for an absolute divorce on the same grounds, praying for a division of the property.

After both parties had availed themselves of considerable discovery, the appellee amended her complaint to allege that defendant had moved out of their home without fault on her part and to pray for separate maintenance only and not for divorce. Twelve days later the case went to trial on her complaint for separate maintenance and his cross-complaint for an absolute divorce and property settlement. At that hearing the plaintiff testified only that there had been a breakdown in communication and that he had moved out of the house and she was unable to support herself. She did not

testify to any statutory ground for divorce or alimony. After appellee rested her case appellant moved for, and was granted, a voluntary non-suit on his cross-complaint for divorce and property settlement. The court announced that upon her testimony and the prayer of the complaint no property settlement would be ordered and that she would be granted separate maintenance only. He set a date for a subsequent hearing on the motion for attorney's fees.

The court found that the plaintiff had proved grounds sufficient for award of separate maintenance — that there had been a separation, that she was free from fault and in need of financial support from her estranged husband. The chancellor ordered the appellant to pay the appellee the sum of $1444 per month for her support and maintenance and ordered the appellant to pay to the appellee's attorney the sum of $6500 as an attorney's fee and $98.60 expenses.

## 1) THE AUTHORITY OF THE COURT TO AWARD ATTORNEY'S FEES.

Appellant's argument that the court had no authority to award attorney's fees is based on the narrow distinction between the statutory action for divorce from bed and board (divorce *mensa et thoro*) as provided in Ark. Stat. Ann. § 34-1202 et seq. (Supp. 1981) and the common law remedy of "separate maintenance" which is awarded under the inherent powers of equity. These distinctions have been extensively discussed in *Lytle* v. *Lytle,* 266 Ark. 124, 583 S.W.2d 1 (1979) and *Spencer* v. *Spencer,* 275 Ark. 112, 627 S.W.2d 550 (1982). The statutory remedy for limited divorce (divorce *mensa et thoro*) is available only on proof of one of the statutory grounds and corroborating testimony. During the pendency of an action for absolute divorce or a limited one the chancery court has the authority to allow attorney's fees to either spouse upon a showing of circumstances warranting it. Ark. Stat. Ann. § 34-1210 (Supp. 1981).

The appellant argues that absent a statute there is no authority for allowance of attorney's fees in matters of this kind. He contends that as the only relief prayed for and granted was under the inherent powers of equity the trial court lacked the authority to award fees in any amount.

Our courts have recognized the inherent power of a court of equity to award attorney's fees in domestic relations proceedings other than those for statutory divorce and alimony. *Payne* v. *White,* 1 Ark. App. 271, 614 S.W.2d 684 (1981); *Gusewelle* v. *Gusewelle,* 229 Ark. 191, 313 S.W.2d 838 (1958); *Finkbeiner* v. *Finkbeiner,* 226 Ark. 165, 288 S.W.2d 586 (1956); *Feazell* v. *Feazell,* 225 Ark. 611, 284 S.W.2d 117 (1955); *Waller* v. *Waller,* 220 Ark. 19, 245 S.W.2d 814 (1952). *Tilley* v. *Tilley,* 210 Ark. 850, 198 S.W.2d 168 (1946), while not expressly so holding, gives a clear indication that this inherent power has been extended to suits for separate maintenance. *Feazell* v. *Feazell, supra.* However, since we conclude that this action was a statutory one for divorce, we see no need to interpret or rely upon *Tilley.*

Appellant's argument might be more persuasive if the only pleading before the court had been the amended complaint of the appellee in which she abandoned her statutory proceeding and proceeded only for inherent equitable relief. This action was commenced as a statutory proceeding for absolute divorce, property division and alimony with a cross-complaint for divorce. Under Ark. Stat. Ann. § 34-1210 (Supp. 1981) the chancellor had the authority to grant attorney's fees to either party where the circumstances warranted such relief. The amendment to her complaint eliminating her prayer for divorce did not deprive the court of its authority with respect to attorney's fees on the pending cross-complaint which plaintiff was then defending against. On the date of the trial there was in fact a pending statutory action for divorce before the chancellor. It is not the relief which the court actually grants but the nature of the proceedings before it which governs the applicability of that statute. The court could have denied all relief to both parties and still have awarded attorney's fees had the circumstances warranted it. We find no merit to this contention.

## 2) THE PROPRIETY OF AWARDING FEES

Whether the chancellor should award fees and the amount thereof are matters within the discretion of the chancery court. In determining whether to award fees he

must consider the relative financial abilities of the parties. *Aucoin* v. *Aucoin*, 211 Ark. 205, 200 S.W.2d 316 (1947). Among the pertinent considerations in determining the amoung of attorney's fees are the attorney's judgment, learning, ability, skill, experience, professional standing, the relationship between the parties and the importance of the subject matter of the case, the nature, extent and difficulties of services, the research, anticipation of defenses and means of meeting them and receiving of confidential information and giving of confidential advice before any pleadings are filed or other *visual* steps are taken. In making these determinations the trial court's own experience and knowledge of the character of such services may be used as a guide. *Robinson* v. *Champion*, 251 Ark. 817, 475 S.W.2d 677 (1972). On appellate review considerable weight is given to the opinion of the judge before whom the proceedings were conducted. The chancellor is in a much better position to evaluate the services of counsel than an appellate court, and unless a clear abuse of discretion is evident, the chancellor's action in fixing attorney's fees will not be disturbed on appeal. *Warren* v. *Warren*, 270 Ark. 163, 603 S.W.2d 472 (1980).

In the case at bar the wife, subsequent to her marriage in 1947, had been principally a housewife and had no regular employment or qualifications for employment. Her assets consisted of some investments and a half interest in a farm from which she realized an income which did not exceed $2500 a year. The value of her assets was approximately $25,000.

The husband's financial statement showed a financial net worth approximating $500,000. He had an annual net income in excess of $80,000 and was steadily employed. We find no abuse in the chancellor's discretion to require him to pay her attorney's fees under these circumstances. Appellee's counsel represented to the court that he had expended in excess of 200 hours in preparation for the case and had incurred substantial fees of appraisers and accountants in preparation for the property division issue. His claim for services and expenses was in excess of $15,000.

The appellant's counsel did not question the amount of hours claimed to have been expended but contended that a large part of it was consumed by repetitious duplication of effort in "woodshedding" his client and that the fees incurred for expert testimony should not have been considered. The court indicated that he would take all of these matters into consideration, would seek to evaluate the legal services equitably, and would try to strike a balance between the interests of the attorney and of those of his client who was to bear the burden of his fees. It was not necessary for the chancellor to conduct an exhaustive hearing on the amount of attorney's fees to be allowed because he had presided over the proceedings and was familiar with both the case and the services rendered by the attorney. *Lytle* v. *Lytle, supra; Pitcher* v. *Baltz,* 242 Ark. 625, 414 S.W.2d 859 (1967).

In announcing his decision the chancellor stated:

> I know that hours come into play, the amount of service and this, that and the other thing. Time taken during the trial, and we've had many hearings over here, some brief, all of them loud. This figure won't satisfy either of you. I am not fixing Mr. Rowland's fee, all I'm requiring is that Mr. Paulson pay $6500 plus the actual cost of $98.60. I don't know, you all said them a while ago. Taking into consideration the size of the estate and this, that and the other things, this is the best I could come up with. *I thought about it a lot.* (Emphasis added)

From our examination of the record, the statement of counsel as to the time expended, the nature and extent of the discovery and evidence of other preparations for trial, we cannot conclude that the chancellor erred in his order directing the appellant to bear that portion of the expense.

## THE CROSS APPEAL

By cross appeal the appellee maintains that the chancellor's award of $1444 per month was clearly against the weight of the evidence. She contends that by a clear preponderance of the evidence she was entitled to receive

$1800 per month. The evidence indicated that the husband had a net worth in excess of $700,000 in 1980. For reasons not clearly explained his net worth had decreased to $350,000 in 1982, but it appears that his income remained about the same. He undoubtedly still had assets and income sufficient to justify an award which would maintain his wife in the manner to which she had become accustomed.

It was shown that the wife had income of approximately $2500 a year. There was evidence that the amount awarded her would maintain her in her customary manner. She offered testimony tending to prove that it was insufficient and that it would take at least $1800 to so maintain her.

There was conflicting evidence tending to support both parties. From our review of the record we cannot say that on this conflicting testimony the finding of the chancellor was clearly erroneous.

Appellee next contends that the chancellor erred when he failed to permit her to make adequate discovery of appellant's out-of-state assets in determining the right of the parties in certain pensions and annuities.

We agree that the chancellor's limitations placed upon the discovery might seriously limit the appellee to thoroughly explore and prove facts from the information sought. However, we find no reversible error because the issue of property settlement was abandoned by her prior to trial. Since she was not seeking a division of those properties she would not have been prejudiced by the actions of the court in limiting her discovery. Appellee suggests in her brief that the limitation placed on discovery was a factor causing appellee to convert her action for divorce to one for separate maintenance. This argument was never presented to the chancellor and will not be considered by us on appeal. In any event the testimony of the wife indicates that her reasons for converting her action were entirely different. She testified that she dismissed her divorce action in the hope that during the three year period of separation her husband might return to her. We find no merit to this contention.

Prior to the submission of this case the appellant filed a motion to strike portions of a supplemental abstract and brief of the appellee on grounds that it contained documents which were not admitted into evidence in the action before the chancellor. We agree with the appellant that as these matters were not made part of the record in the chancery court they were improperly abstracted and should be stricken. A major portion of this material consisted of the attorney's time sheets and comments. The striking of this material does not alter our decision because the evidence of the time expended by the attorney was properly presented to the chancellor even though his written time sheets were not introduced.

The appellant has moved that costs be imposed upon appellee for inclusion in the record matters which were not material to a decision in this case. Appellee, on the other hand, contends that the matters were necessary and points out that she had paid the cost of their inclusion in the record. As we deny the relief prayed on both the appeal and cross appeal we conclude that the proper order to enter is that each party bear its own costs.

Affirmed.